UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY $38,800 IN UNITED STATES CURRENCY,<br><br>Defendant. | Case No. 18-cv-01723-MEJ<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: ECF No. 13 |

## INTRODUCTION

The United States of America brings this *in rem* action seeking forfeiture, under 21 U.S.C. § 881(a)(6), of the defendant $38,800 as money furnished or intended to be furnished in exchange for a controlled substance. Compl., ECF No. 1. Pending before the Court is the government's Motion for Default Judgment. ECF No. 13. No opposition has been received. The Court finds this matter suitable for disposition without oral argument and **VACATES** the August 23, 2018 hearing. Fed. R. of Civ. P. 78(b); Civ. L.R. 7-(1)(b). For the reasons stated below, the Court **GRANTS** the government's motion for default judgment.

## BACKGROUND

On October 4, 2017, the $38,800 ("the defendant currency") was seized at the San Francisco International Airport ("SFO") in a search of the luggage of Mohammed Zaman, who is 28 years old. Compl. ¶¶ 7, 23. Zaman was traveling with two others – one a teenage juvenile. *Id.* ¶ 7. All had bought one way tickets from Baltimore to San Francisco. *Id.*

After the three males left their plane and passed the baggage carousel, DEA Task Force agents at SFO approached and engaged in a consensual discussion with Zaman's two fellow travelers. *Id.* ¶ 13. The discussion led to their consent for the agents to search their two bags. *Id.*

¶¶ 16, 19.  A residual amount of marijuana was found loose in one bag, and both travelers claimed not to know how it got there.  *Id.* ¶ 21.  The agents also discovered that the two bags contained a total of $116,000 in cash.[1]  *Id.* ¶ 20.

Zaman, who had left to go outside, rejoined his fellow travelers and claimed his bag.  *Id.* ¶¶ 17, 18.  He engaged in a consensual discussion with the agents, and he consented to a search of his bag.  *Id.*  Before the search, Zaman said he did not know how much money he had in his bag.  *Id.* ¶ 22.  The search revealed cash inside that totaled $38,800.  *Id.* ¶ 23.  The cash in all three bags consisted almost entirely of $20 bills – over six thousand of them.  *Id.* ¶¶ 20, 23.  The money in the bags was all bundled similarly in rubber-banded stacks and stuck haphazardly into shoes, jeans, and other clothes.  *Id.*

San Francisco is a source city for several controlled substances, including marijuana.  *Id.* ¶ 12.  Marijuana grown in northern California is commonly exported illegally to states across the country.  *Id.*  SFO is a common entry point for large amounts of cash being brought into California to buy marijuana and to take it out of the state to sell.  *Id.* ¶¶ 12, 25.

The other adult traveler with Zaman was 26 years old and had a long criminal history characterized by multiple arrests for marijuana and other drug distribution offenses.  *Id.* ¶ 12.  In two separate earlier arrests, he had cash totaling approximately $40,000 seized from him, and it was all forfeited, in different courts, due to being found to be the proceeds of marijuana trafficking.  *Id.* ¶¶ 9, 10.  That same fellow adult traveler claimed to have only $20,000 dollars in annual income.  *Id.* ¶ 26.

Zaman, who lives in Maryland, told the agents that he was unemployed.  *Id.* ¶ 27.  Despite being unemployed and carrying $38,800 in cash in his bag, Zaman has a financial record of funneling extensive cash amounts from the east coast through bank accounts to individuals in California who have criminal histories for drug trafficking.  *Id.* ¶ 30.  This "funneling" technique is a common drug trafficking practice for quickly moving large amounts of money across the

---

[1] Zaman's fellow travelers never made any claim for the currency discovered in their bags or in Zaman's bag, all of which was seized for forfeiture by DEA.

country by depositing it in a bank branch in one geographic location and withdrawing it from a branch in another, distant location. *Id*. Zaman's activity involved making several cash deposits in a bank account in a manner consistent with the structuring of small cash deposits to evade a bank's federal reporting requirements, which is a federal crime. *Id*. In late 2016, Zaman co-owned at least one bank account with a person convicted in 2014 for the distribution of marijuana, and Zaman used that account to quickly move approximately $20,000 in cash from Virginia, in which his cash deposits had been broken up into small unreportable amounts (that is, less than $10,000), across the country where the money was promptly withdrawn. *Id.* Zaman engaged in this conduct with multiple banks, that is, depositing cash in east coast states via ATMs followed quickly by cash withdrawals in California. *Id.*

At SFO, the cash discovered in the bags of Zaman and his fellow travelers were each separately alerted to by a sophisticated police canine that is trained to alert to the ephemeral by-products of controlled substances, including marijuana, thereby indicating that all of the cash had been in the presence of such. *Id*. ¶ 29.

Zaman and his fellow travelers were interviewed but were unable to provide any coherent reason for traveling to California. *Id*. ¶¶ 27-28. They had made no reservations for anywhere to stay. *Id*. ¶ 24. One eventually described a plan to rent a car and drive it out of state. *Id*. Flying into SFO and driving a car from California back east is a common method of bringing cash to California and then buying and transporting marijuana and other drugs eastbound out of California. *Id*. ¶¶ 12, 25.

DEA seized the $38,800, along with the $116,000 in the other two bags, under 21 U.S.C. § 881(a)(6), as money furnished or intended to be furnished in exchange for a controlled substance. *Id*. ¶¶ 30, 34.

On March 20, 2018, the United States filed an *in rem* Complaint For Civil Forfeiture seeking forfeiture of the defendant $38,800 pursuant to 21 U.S.C. § 881(a)(6), which authorizes forfeiture of currency furnished or intended to be furnished in exchange for a controlled substance; currency traceable to such an exchange; and currency used or intended to be used to facilitate a

violation of Subchapter I, Chapter 13 of Title 21, United States Code. *Id.* ¶¶ 1, 34.

Notice of the Complaint for Forfeiture has been publically posted with instructions on when and how to file a claim and answer. Decl. of Publication, ECF No. 9. The government also served notice on Mohammed Zaman, who claimed the bag that contained the $38,000, directly by certified mail. Mot., Attach. A. The deadline for filing a claim passed with no claim or answer being filed.

The government filed its motion for default judgement and served it on the appropriate parties on July 3, 2018. ECF Nos. 13, 14. No response or opposition to the default judgment motion has been filed, and the time for doing so has passed.

## MAGISTRATE JUDGE JURISDICTION

As an initial matter, the court must address whether it has jurisdiction to enter judgment. Under 28 U.S.C. § 636(c)(1), a magistrate judge may enter judgment in a civil action "[u]pon the consent of the parties." The term "parties" under 28 U.S.C. § 636(c)(1) includes "all plaintiffs and defendants named in the complaint—irrespective of whether the complaint has been properly served." *Williams v. King*, 875 F.3d 500, 503 (9th Cir. 2017).

In *in rem* actions such as this, the action is against the property itself. Only those who file a claim to the property are parties to the actions, and accordingly must consent to magistrate judge jurisdiction. *See United States v. Real Prop.*, 135 F.3d 1312, 1317 (9th Cir. 1998) ("[A]bsent the filing of a claim to a property subject to forfeiture, a putative claimant is not a party to the action;" it is therefore unnecessary to obtain the consent of the putative claimant to the jurisdiction of a magistrate judge prior to the entry of a default judgment against the claimant's interest in the property) (citation and internal quotation marks omitted). These principles remain undisturbed after *Williams*. *See Williams*, 875 F.3d at 504 (recognizing the principles in Real Property as applicable to in rem actions, and explaining that the "same principle[s]" did not apply to the case before it because, among other reasons, it was not *in rem*); *Keefe Kaplan Mar., Inc. v. Vessel "Cygnet,"* 2018 WL 534300, at *2 (N.D. Cal. Jan. 24, 2018) (explaining that the Ninth Circuit "affirmed [the] narrow exception" for magistrate jurisdiction consent described in Real Property

for in rem forfeiture proceedings).

Applying these principles, this action is *in rem* against the Currency. Notice was provided to all putative claimants, and no one has filed a claim to the Currency. The only party in this action is the government, which has consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1). ECF No. 7. Therefore, this court has jurisdiction to enter default judgment. *See United States v. Approximately $94,600*, 2018 WL 2215845 at *3 (N.D. Cal. May 5, 2018). (finding magistrate jurisdiction to enter default judgment against $94,600 in U.S. currency in *in rem* forfeiture action upon the consent of the plaintiff, which was the only party to the action).

## CIVIL FORFEITURE

The government brings this action under 21 U.S.C. § 881(a)(6), which provides for the forfeiture of "[a]ll moneys . . . intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter. . . ." Section 981(b)(2)(A), in turn, permits a seizure without a warrant if "a complaint for forfeiture has been filed in the United States district court and the court has issued an arrest warrant in rem pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims." "Forfeiture is a harsh and oppressive procedure which is not favored by the courts." *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1069 (9th Cir. 1994) (quotation omitted). The Ninth Circuit has stated that it is "particularly wary of civil forfeiture statutes, for they impose 'quasi-criminal' penalties without affording property owners all the procedural protections afforded criminal defendants." *Id.* at 1068. "[F]orfeitures should be enforced only when within both letter and spirit of the law," *United States v. Marolf*, 173 F.3d 1213, 1217 (9th Cir. 1999) (quotation omitted), and "forfeiture statutes are strictly construed against the government." *$191,910.00 in U.S. Currency*, 16 F.3d at 1068 (citation omitted). Accordingly, "strict adherence to procedural rules is paramount in civil forfeiture proceedings." *United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, 2010 WL 2695637, at *1 (D. Nev. July 2, 2010) (citing *Marolf*, 173 F.3d at 1217 (denying forfeiture because government failed to provide due notice to property owner)).

Property subject to civil forfeiture may be forfeited under the Federal Rules of Civil

Procedure Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Fed R. Civ. P. Supp.") and this District's Admiralty & Maritime Local Rules. *United States v. Real Property*, 135 F.3d at 1317; Admir. L.R. 1-2. Under Admiralty & Maritime Local Rule 6-1(a), "[a] party seeking a default judgment in an action *in rem* must show that due notice of the action and arrest of the property has been given . . . [t]hrough execution of process in accordance with [Fed. R. Civ. P. Supp.] G(3); and [i]n accordance with [Fed. R. Civ. P. Supp.] G(4)." Admir. L.R. 6-1(a)(1). The court must examine whether the government has strictly complied with the procedural rules governing civil forfeiture proceedings with respect to the Currency.

**A.      Fed. R. Civ. P. Supp. G(2): Adequacy of the Complaint**

Rule G(2) sets forth the following requirements for a complaint in "a forfeiture action in rem arising from a federal statute," as follows:

> The complaint must:
>
> (a) be verified;
>
> (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
>
> (c) describe the property with reasonable particularity;
>
> (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;
>
> (e) identify the statute under which the forfeiture action is brought; and
>
> (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Fed. R. Civ. P. Supp. G(2).

The government has satisfied the requirements of Rule G(2). The government's complaint was verified by DEA TFA Joseph Baker. Compl. at 7 (Verification). It states the grounds for *in rem* subject matter jurisdiction and venue under 28 U.S.C. §§ 1345, 1355(a), 1355(b), and 1395. Compl. ¶¶ 1-2, 4. The complaint also describes the amount of currency, and states that the seizure occurred at SFO. *Id.* ¶¶ 6, 7. Furthermore, the complaint identifies that the forfeiture action is being brought under 21 U.S.C. 881(a)(6), and provides sufficient facts as described above

regarding the suspicious nature of the Currency to support a reasonable belief that the government can meet its burden of proof at trial.  *Id.* ¶¶ 7-30.

**B.      Fed. R. Civ. P. Supp. G(3): Judicial Authorization and Proces**s

Rule G(3) governs judicial authorization and process.  It provides that "[i]f the defendant is not real property, the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control."  Fed. R. Civ. P. Supp. G(3)(b)(i).  In the present case, the clerk issued a valid arrest warrant on March 21, 2018.  Arrest Warrant, ECF No. 5.

Moreover, under Rule G(3), "[t]he warrant and any supplemental process must be delivered to a person or organization authorized to execute it," including "someone under contract with the United States."  Fed. R. Civ. P. Supp. G(3)(c)(i).  Here, the certificate of service states that a paralegal within the Asset Forfeiture Unit of the United States Attorney for the Northern District served the relevant documents in this case by first class mail and certified mail upon Mohammed Zaman, who claimed the bag in which the defendant currency was found.  Certificate of Service, ECF No. 8; *see also* Lowder Decl. ¶¶ 3-4, ECF No. 13-1. Accordingly, the government has complied with Rule G(3).

**C.      Fed. R. Civ. P. Supp. G(4): Notice**

Rule G(4) requires the government to provide both general notice to the public and direct notice of the forfeiture action to any known person who reasonably appears to be a potential claimant.  Fed. R. Civ. P. Supp. G(4)(a), (b).

1.      Notice by Publication

Rule G(4)(a)(ii) provides that "a published notice must: (A) describe the property with reasonable particularity; (B) state the times under Rule G(5) to file a claim and to answer; and (C) name the government attorney to be served with a claim and answer."  Here, the United States published the required notice of the government's Complaint on the official government internet site (www.forfeiture.gov) for 30 consecutive days, beginning on March 23, 2018.  ECF No. 9 (Decl. of Publication).  The notice describes the amount of currency ($38,800.00), and location of its seizure (SFO), and states that claims and answers under Rule G(5) must be brought within 60

days from the first day the notice is published.  It names Gregg W. Lowder as the government attorney to be served with the claim and answer.  Thus, the government has satisfied the requirements of Rule G(4)(a)(ii).

### 2. Notice to Known Claimants

Rule G(4)(b) sets forth the requirements for notice to known potential claimants.  It states that "[t]he government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)."  Fed. R. Civ. P. Supp. G(4)(b)(i). The notice must state "(A) the date when the notice is sent; (B) a deadline for filing a claim, at least 35 days after the notice is sent; (C) that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and (D) the name of the government attorney to be served with the claim and answer."  Fed. R. Civ. P. Supp. G(4)(b)(ii).

Here, the government complied with this rule by sending notice of the action and a copy of the complaint to the potential claimant, Mohammed Zaman, on April 20, 2018.  Certificate of Service, ECF No. 8.  The mailed notice included copies of the complaint, notice of this forfeiture action, the arrest warrant, and other related documents.  As to the sufficiency of the notice sent by the government, it indicates that it was sent on April 20, 2018.  It provides a 35-day deadline for filing a claim and a 21-day deadline for submitting an answer or a motion under Rule 12.  It lists Gregg W. Lowder as the government attorney to be served with the claim and answer.

Finally, Rule G(4)(b)(iii)(A) provides that "[t]he notice must be sent by means reasonably calculated to reach the potential claimant."  Here, the certificate of service provides that the United States served the Complaint for Civil Forfeiture and notice of this forfeiture action upon Mohammed Zaman by U.S. Postal Service Certified Mail.  ECF No. 8.  The return receipt reflects service occurred directly upon Mohammed Zaman by U.S. Postal Service Certified Mail, evidenced by a Certified Mail receipt of delivery upon Zaman bearing Zaman's signature and reflecting delivery at his residence address.  *Id.*; Lowder Decl., Attach. A ¶¶ 3-4, ECF No. 13-1. The 35 day deadline for Zaman to file a claim elapsed on June 1, 2018, and Zaman has not filed

United States District Court
Northern District of California

any judicial claim.

In sum, the government has adhered to the procedural rules governing civil forfeiture actions as required by federal statute, the Supplemental Rules for Certain Admiralty and Maritime Claims, and the Admiralty Local Rules. The court now addresses whether default judgment is warranted.

## DEFAULT JUDGMENT

### A.     Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

1.     Subject Matter Jurisdiction and In Rem Jurisdiction

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1355(a), which provides district courts with original jurisdiction over "any action or proceeding for the recovery or enforcement of any . . . forfeiture . . . incurred under any Act of Congress[.]" Venue likewise exists in this Court under 28 U.S.C. § 1355(b)(1)(A), which provides that a forfeiture action may be brought where "the acts . . . giving rise to the forfeiture occurred," and under 28 U.S.C. § 1395, which provides that "[a] civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found." Since the defendant currency was found at SFO, and SFO is located in this district, and further that acts which occurred at SFO give rise to forfeiture, this Court has *in rem* jurisdiction over the defendant currency and venue is appropriate in this Court.

This court must also determine whether it has jurisdiction over the Currency. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). *In rem* jurisdiction treats an item of property as a person against whom suits can be filed and judgments can be entered. *United States v. $29,959.00 U.S. Currency*, 931 F.2d 549, 551 (9th Cir. 1991). The Ninth Circuit relies on a plain reading of 28 U.S.C. § 1355(b) as the appropriate jurisdictional test for in rem proceedings. *United States v. Approximately $1.67 Million (US) in Cash, Stock & Other Valuable Assets*, 513 F.3d 991, 996 (9th Cir. 2008). That statute provides that "[a] forfeiture action or proceeding may be brought in

the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). Therefore, *in rem* jurisdiction exists if the Currency was seized within this district. Since the Currency was seized at SFO, which is located within the Northern District of California, the district court has *in rem* jurisdiction over the Currency.

**B.      Legal Standard – Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for courts to consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

**C.      Application to the Case at Bar**

The first *Eitel* factor examines whether the government will suffer prejudice if the court does not enter a default judgment against the Currency. *Eitel*, 782 F.2d at 1471. Courts have found prejudice where the plaintiff will be without a means for recourse if the defendant fails to appear or defend against the suit. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, no party has attempted to oppose the verified complaint or otherwise make a claim against the Currency. If the government's motion is not granted, it "will have no other opportunity to establish its right to the Currency pursuant to the verified complaint." *United States v. Approximately $50,000 in U.S. Currency*, 2017 WL 3616443, at *6 (N.D. Cal. Aug. 7, 2017), report and recommendation adopted, 2017 WL 3605224 (N.D. Cal. Aug. 22, 2017).

Therefore, the first factor weighs in favor of default judgment.

The second and third *Eitel* factors address the merits of a plaintiff's substantive claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1472. In analyzing these factors, the court accepts as true all well-pleaded allegations regarding liability. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

As noted, 21 U.S.C. § 881 provides for the forfeiture of money "furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter." 21 U.S.C. § 881(a)(6). Here, the government's allegations, accepted as true, show that the Currency is subject to forfeiture under 21 U.S.C. § 881(a)(6), as the government asserts that the Currency was related to drug trafficking. Evidence supporting this conclusion includes the fact that the narcotics detection canine, gave an alert upon detecting the odor of controlled substances in the three men's bags. Compl. ¶ 19. The Ninth Circuit has held that the alert provided by a narcotics-detection canine is "an important factor in determining probable cause," and provides evidence of a link between seized money and controlled substances. *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 982-83 (9th Cir. 2002). Additional facts in the verified complaint also support the conclusion that the funds were related to drug trafficking. These facts include that three young men arrived at SFO, a source city for marijuana and other controlled substances. Compl. ¶¶ 7, 12. Two were in their twenties, and one a 17 year old juvenile. *Id.* ¶¶ 7-8. Only one adult has a job, but with annual income of only $20,000. *Id.* ¶¶ 26, 27. That adult – Ansari – is a convicted drug trafficker with a long criminal history who on multiple occasions has had large amounts of cash (nearly $40,000 total) seized by law enforcement officers and forfeited in court as proceeds of marijuana trafficking. *Id.* ¶¶ 8-10. Ansari has a pattern of transporting such proceeds with individuals who have little or no criminal history – like Zaman and the 17 year old juvenile. *Id.* ¶¶ 9-11. Despite having no significant criminal history, Zaman, the unemployed Maryland resident, does have a significant history of sending large amounts of money to convicted drug traffickers in California by mailing money orders to them and funneling cash, broken up into small serial deposits, through bank accounts to

them.  *Id.* ¶ 30.  At SFO, the two adults and one juvenile altogether carried over $150,000 in cash, almost all in $20 bills, and this large amount of money was bundled in rubber band stacks and haphazardly stuffed in clothes in their bags.  *Id.* ¶¶ 20, 23.  One of the bags also had loose residual marijuana inside it, which none of the travelers could explain; however, it is common that cash to pay for marijuana is transported in the same bag that earlier delivered the marijuana.  *Id.* ¶¶ 12, 21.  The three travelers had no coherent story describing a legitimate purpose for their one way travel to a known supply city for marijuana and other drugs, but rather claimed to have arrived here, with no reservations to stay anywhere, to attend an event that had already passed.  *Id.* ¶¶ 7, 12, 24, 28.  In questioning, one indicated they flew here with the intent to rent a car and drive out of state – a common method for moving marijuana out of California.  *Id.* ¶ 24.  Lastly, before the bags were searched, the unemployed Zaman stated he did not even know how much cash was in his own bag.  *Id.* ¶ 22.  It turned out to be $38,800, all but a few hundred dollars being in $20 bills.  *Id.* ¶ 23.  Therefore, there is a strong likelihood that the government would be successful on the merits.  The second and third *Eitel* factors thus weigh in favor of granting default judgment.

As to the fourth Eitel factor, default judgment is discouraged "[w]hen the money at stake in the litigation is substantial or unreasonable" in relation to the defaulting party's conduct.  *Bd. of Trs. v. Core Concrete Const., Inc.*, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472).  Here, the defendant currency $38,800 is not an insubstantial sum, but the currency represents the consideration in an illegal drug transaction.  Given its nature as either payment or proceeds, a default judgment for this sum is reasonable.  *See, e.g., United States v. $35,090*, 2014 WL 4370849 at *3 (N.D. Cal. 2014)  (default judgment order for $35,090 found to be reasonable in drug proceeds seizure at SFO airport, and noting that in *Eitel* itself the amount at issue was 2.9 million dollars); *United States v. Approximately $94,600 in U.S. Currency*, 2018 WL 2215845, at *9 (default judgment order for $94,600 found to be reasonable in drug proceeds seizure at SFO airport); *United States v. $99,870*, 2015 WL 7194295 at *4 (C.D. Cal. 2015) (default judgment order for $99,870 as proceeds of an illegal drug deal not unreasonable).

The fifth and sixth *Eitel* factors address the possibility of a dispute concerning material

facts and whether the default was due to excusable neglect. *Eitel*, 782 F.2d at 1471-72. Here, the potential claimant was properly served with notice of this action and instructions on how and when to enter a claim. No claim or answer has been filed. On the state of the record before this Court, there is no evidence of a dispute concerning material facts or excusable neglect.

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id.* However, courts have recognized that "the mere existence of [Rule 55(b)] indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation and citation omitted). Although this factor weighs against default judgment, no claimant has come forward to contest the forfeiture, making it impossible to obtain a decision on the merits. *See Approximately $50,000 in U.S. Currency*, 2017 WL 3616443, at *7 (finding that the seventh *Eitel* factor did not outweigh the other six factors where there was no claimant in the case, and, as such, it was not possible to obtain a decision on the merits); *United States v. Approximately $94,600 in U.S. Currency*, 2018 WL 2215845, at *9 (same).

In sum, the court concludes that the *Eitel* factors favor default judgment.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** the government's motion for default judgment against Defendant $38,800.00 in United States Currency, and enters judgment for the United States of America. The Currency shall be forfeited to the United States of America, and all right, title, and interest in the Currency shall be vested in the United States of America. Immediately upon receipt of this order, the government shall serve a copy of this order on all known interested parties at their last known address or through their attorneys, if known, and shall file a proof of service.

**IT IS SO ORDERED.**

Dated: August 7, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge

13